Good morning, Your Honor. Anthony Brown for the plaintiffs and the appellants, and I'd like to reserve three minutes for rebuttal. Your Honors, in just four years, between 2014 and 2018, Edward Jones doubled the percentage of advisory program assets that were under the company's management. When they did that, they doubled the fee-based revenue, and their fee-based revenue went from $3 billion to $6 billion, which accounted for about 80% of its total revenue. And a lot of that was due to the conduct that's alleged in this case. Specifically, Edward Jones had many small investors, people who were investing $200,000 or less, that were in brokerage accounts that charged commissions only. Edward Jones recommended that they switch their accounts, the entire investment vehicle, from the commission-based accounts to advisory fee-based accounts that charged higher fees. And as a result, they ended up making more money. It was clearly in the interest of Edward Jones to do that. It was not in the interest of the plaintiffs to move their accounts over, because in the long run... So we know these facts, and we have read your briefs. Could you address the issues we asked about in our oral argument order about the Worthingtons in particular, and when they switched their account, what the source of the fiduciary duty was, and the other questions that we asked? The court asked whether there was some substantive difference between the fiduciary duty that was owed to the Worthingtons when they switched the trust account over, and the answer to that is really no. And to answer that question, I have to go back to the beginning, which says, in California, whether you're a broker or a financial advisor, you have a fiduciary duty to your client. It's really that easy. So in your brief, when you talk about the California fiduciary duty, it's pretty sparse, but what I understood was a lot of stuff about control. And I don't think you really said that these financial professionals were exerting control over these accounts. We're not saying anything about control. That's Edward Jones's argument. Our argument doesn't have anything to do with control. So where are the cases you've pointed us to where there's a fiduciary duty in California to act in the client's best interest in the absence of control by the financial person? Yeah, so you're going to have to give me a second to get there because it takes a little bit of backing up. Look at Duffy and Twomey, and in both of those cases, the court recognizes that whether you're a broker or a financial advisor, you owe a fiduciary duty. What is a fiduciary duty in its essence? It is the duty to act in the utmost – I'll quote it for you. The duty of the broker being a fiduciary character must be exercised with the utmost good faith and integrity. That's Duffy. There's no question that that's what the fiduciary duty is. The question in this case is how do you apply that under the particular circumstances of what happened here? And to do that, you have to ask yourself, what's going on? Are they offering transaction advice about what investments to put their money in? Or are they offering advice about whether you should be in a commission-based brokerage account or in a fee-based advisory account? It's a different kind of inquiry. If it's just whether or not you should be investing in a specific security, the question about the control over the account matters. And there's a sliding scale there. Because obviously if you're the kind of investor who says, look, I know what I'm doing. You just leave it up to me. I'm going to tell you what to invest in. I just want you to broker the transaction. Then there's a lower fiduciary duty. But if you're a brokerage client – and this is what happened in the case. You're a brokerage client with Edward Jones. They say, we want you to come in. We're inviting you to come in to speak with our financial advisor. We want to offer you some advice about your financial future. We're going to do some pamphlets. We're going to look at our options that are available. We're going to ask you some questions. And then we're going to recommend to you to move from your brokerage account to the fee-based advisory account. So these are pre-existing clients. They're people who were already – had trust in their brokers at Edward Jones for the advice that they were offering. And they were being invited in. It's not like someone walked off the street and came into Edward Jones and they said, I see you've got a bunch of pamphlets over there about all of the options that are available. Can you give me some of them? I'll review them, and then I'll tell you if I want to exercise my option to choose an advisory account or something else. These people were brought in specifically for the purpose to go over their Making Good Choices pamphlet. And then Edward Jones said, after that inquiry and after that invitation, after bringing them into the office, they said, this is what we recommend to you. And you have to – So I was going to say, I understand your primary argument about California's fiduciary duty. I think it is complicated by our own still-binding presidential decision, LaVauch. I think that's how you would pronounce it. And I think there's at least arguably some nuance to the California fiduciary duty, its scope, and how it would apply to the facts of this case. But assuming for the sake of argument that the district court's understanding of the fiduciary duty was correct and it was more limited, essentially, for some of the plaintiffs here, then we get to the question of our focus order. I understand your primary argument is there is a high fiduciary duty for all the plaintiffs. Assume for the moment in answering the first question of our focus order that the scope of the fiduciary duty, to the extent it existed, does not support your claim for the plaintiffs other than the Worthingtons. Just assume that. I understand your argument is that it does. But if you assume that, then is there another source of a greater fiduciary duty with respect to the Worthingtons? And if so, what? It's complicated because the scope of the fiduciary duty has to be determined with respect to the actual transaction that's being made. I want to point to, and I understand the question, and I'm not going to try to dodge it, but I want to point to another quote from Duffy which I think is critical for this case, and it comes just a little bit after the one that I quoted. This is on page 1531. The trial court is entitled to look at the substance and not the form of the transaction in determining the duty. Just to be clear, like, so are you, your argument is that we should be thinking about the Worthingtons and anyone else. We should think about the specific transaction that is at issue. So the fact we should be thinking about that this was a proposal to enter into an advisory relationship by their broker and that that should be the focus of our consideration of what duty is owed and that the fact that they had already had in the background this advisory relationship is not relevant in determining what the duty is? Oh, I thought you were going somewhere else. I agree with the first part and disagree with the second part. I think that the specific transaction itself in this case is the recommendation to move from a brokerage account to a fee-based advisory account. And that was made at the time they had a, that relationship was a brokerage relationship, correct? That specific relationship was a brokerage relationship, but there is a question of fact about whether they were financial advisors under the circumstances. So I, so that's the problem that I'm having is I think that. Well, where is there any case that says that the brokerage account has duties beyond a brokerage account duties? Yeah, so that's the point that I'm trying to make is I can be, so this is what Edward Jones says. They say, look, if I take my brokerage account hat off and put on my financial advisor account, I'm a financial advisor. But as long as I keep this brokerage account hat on, then I stay a broker. That's not what California law says. So where do we have a California law case that says that when you're recommending a particular type of account, you have not just no fraud, not just like disclose the facts, but actually you can only recommend the best kind of account? What case says that? Because I think that's what you want. Duffy and Twomey and Hasso v. Hapke, they all say that. Now, are the facts the same as the one that you just said? No. But what they say is the fiduciary duty is to act in the utmost good faith and integrity. And then the question is how do you apply that under the circumstances? Hasso v. Hapke. So utmost good faith and integrity is different from a best interest standard necessarily, though, right? I mean, I think that's the point we were talking about, that there's a lot of variation. And here it seems like we have to identify some source of a best interest duty, correct?  Well, I wonder whether that's true. Well, I think your expert only testified about this not being in the best interest. So if we don't have a duty that lines up with what the expert opined on, I think the expert becomes irrelevant and you have no facts. So don't you need to have a — you need the duty you're pointing to in the law to line up with what the expert was talking about.  So the duty is to act with integrity and the utmost good faith. And what does that mean?  So if that's the only duty, then I don't know that your expert even talked about that, because instead he talked about this wasn't the best kind of account. Right. How hard is it to translate from that to a question about whose best — whose interest is this transaction in? It's the same inquiry. If I can point you to footnote 8 of Duffy — Well, couldn't it be in the client's interest and Edward Jones' interest at the same time? Are you saying — I mean, you're saying because it benefited Edward Jones, it could not have benefited the clients? No. I'm not saying that. What I'm saying is under the very specific circumstances that these plaintiffs fit into, it did not benefit them. And before I get there, this is the Douglas Schultz thing that I think I cannot walk away from the Court today without going into this. But I want to point the Court, Judge Friedland, to answer your question. If you look at footnote 8 of the Duffy case, there's a discussion there about Twomey. And the point of footnote 8 is to say what are the contours of the fiduciary duty for this specific person who's making a recommendation in this case. And it says the broker must assume the responsibility for ascertaining that the customer understood the investment risks involved in her changed objective. So here's the duty in our case. Edward Jones must assume the responsibility for ascertaining that the customer understands the investment costs involved in the changed objective. That's the duty in this case. But that's – I mean, there's a question here. As I recall, there's some factual dispute about what people did or did not know. But the claim is not that – the core claim, at least as I understand it, is not that they were – they lacked information about these accounts. The core claim is regardless of what information they were or were not provided, that it was not in their best interest, right? So we're not talking about an informational injury. We're talking about a claim that they could have said everything in the world about it and that they were nonetheless violating their duty by recommending these accounts with this 0.5% – more than 0.5% differential in the costs, right? Well, it's actually a two-pronged sort of argument. And the first part is why are you bothering to even provide this option to these clients when you know, based upon the facts in the case, that it's not in their best interest? And then the second prong of it is there was a duty to assure that the clients understood that – I mean, there's no dispute that they disclosed the amount of the fee, but what they didn't do is explain – they didn't do the math. They didn't explain – But even – I mean, there's a different – there's an interesting problem here because even – you haven't moved forward with one of your named plaintiffs in this case, correct? Because it turns out when you did the math as to that named plaintiff's accounts, it was below the point – your expert's 0.5% threshold. Correct. So there's a different – in advance, you know, it's not – would it even have been possible for these investment advisors, brokers – sorry, they're wearing their different hats – to run the math to determine that, you know, oh, this person is going to end up with a cost structure that exceeds plaintiff's subsequent 0.5% standard? Yes, it would have been. And that's why you have to look carefully at the Douglas Schultz reports that are in the record, okay? There are three things in particular you need to look at. He did a report, he did a declaration, and he did a rebuttal report. The Douglas Schultz opinion is so grossly mischaracterized by both the district court and Edward Jones. I have to just explain very briefly what he's saying, okay? He says, if you have people who are small investors, $200,000 or less, and they are already in mutual funds, which means that they're already, you know, in suitable investments, and you ask them to move to an asset, like an advisory fee-based account, then if there is a certain amount of additional costs that they're going to incur, and the services that they get provided are not worth those costs, that is presumptively unreasonable. That's what the Schultz opinion says. And it's based on legal advisory reports that came out from NASD, which is the precursor to FINRA, and it's based upon the Oliver Wyman study from 2010 that was a study commissioned by the SEC. It's analogous to the kind of looper metric that was developed to talk about churning, okay? All of this is outlined in his expert report. Now, you wouldn't know any of that because it doesn't appear in the district court's ruling. But what does the Schultz— I think if you want time for rebuttal, I need to cut you off. We have the report, and we can look at what you're talking about. Thank you. Good morning, Your Honors. May it please the Court, my name is Monica Lizman with Gibson Dun & Crutcher on behalf of Defendant Appelli Edward Jones. Let me focus my argument on the three questions that the Court posed just a couple of weeks ago as a roadmap. First, when the Worthingtons opened their joint advisory account, so that guided solutions account, did the fact that they had separate advisory accounts with Edward Jones cause Edward Jones to owe a greater fiduciary duty to them at that time with respect to that guided solutions conversation? The answer to that question is no. There is no reason here that the Worthingtons were owed a greater duty under the circumstances. The mere existence of those separate advisory accounts in which separate funds were managed by Edward Jones that are not the subject of this dispute, that mere fact does not trigger a greater duty with respect to the funds and the investments in the brokerage account. But let's suppose— What authority do you have for that? So would you agree that at least with respect to serving as an investment advisor, there is a fiduciary duty with respect to those accounts? Absolutely, with respect to those accounts. And what is that duty? And the source of that fiduciary duty for the advisory accounts, that source is the Investment Advisors Act. So Edward Jones has an obligation to provide advisory services and a fiduciary obligation with respect to those accounts that are managed in those advisories. And what is the nature of that fiduciary duty? The nature of that fiduciary duty certainly includes to act in the client's best interest, but it includes ongoing duties, right? The scope of the fiduciary duty with respect to those advisory accounts include those ongoing obligations to manage those funds, but also to act in the client's best interest. So that is the scope of the duty that Edward Jones owed the Worthingtons with respect to the investments they held in those advisory accounts. The question is, what duty did Edward Jones and Lisa Rodriguez owe the Worthingtons with respect to the different brokerage account? Now, that question depends on California State law. That's where Duffy and Toomey apply and come into question. The analysis requires the Court to consider the facts or circumstances relevant to those funds and the extent of control that Edward Jones or Ms. Rodriguez exercised over those funds invested in the accounts. I understand. What I have trouble with, and I'm looking at the SEC guidance, it says once a financial professional assumes the role of investment advisor, the advisor takes on a fiduciary duty that applies to all investment advice the investment advisor provides to clients, including advice about account type. Advice about account type includes advice about whether to open or invest through a certain type of account. Why wouldn't that then apply to the Worthingtons? And they said, I think you should switch your brokerage account to a different type of account with higher fees. So first, that guidance that came out from the SEC, that was in 2019. Right. They said they were affirming prior guidance. Prior to that point in time, no case, no Federal court case, no SEC case had applied the duties an advisor owes under the Investment Advisor Act more broadly beyond the scope of funds that were managed within an advisory relationship. So the Belmont case, for example, and the other cases applying Belmont, have never applied it more broadly. So to the extent that was the SEC's changed or new view as of 2019, I suppose that's their view to have. But it doesn't mean it should retroactively apply three years prior to 2016. I mean, they say it's reflecting existing law and reaffirming existing law. And certainly, I mean, I think you've cited a sort of statement by the SEC as well in the Federal Register, not an actual policy, but just a statement supporting, responding to certain comments in support of your claim that there are distinct interests, that there are distinct duties that apply based on the account type, that issue, correct? That is correct. The SEC is saying we are providing guidance. This is our view of the law. But my point is simply that it has certainly never been applied that way by the SEC or any form of law. How is an individual investor supposed to understand when they go in to talk to their financial advisor that, in fact, this part of our conversation today is subject only to the, you know, California duty might apply to brokers or federal might apply to brokers. And that's different from the duty that the same person owes me, you know, 20 minutes ago when we're talking about the kinds of investments that we're going to make and the funds that are in my financial advice. Sure. Well, let's take the Worthington's, for example, the undisputed facts that at the time of that guided solutions conversation, the Worthington's had three accounts with Edward Jones. They had the two retirement advisory accounts. They also had a sizable brokerage account. They chose to open it as a brokerage account because they liked picking their investments on their own. They liked picking which stocks they would choose to invest those brokerage funds in. So respectfully, the undisputed facts, I believe, show that the Worthington's at least appreciated the difference, that they were not relying on Ms. Rodriguez's or Edward Jones' advice in deciding how to invest those particular funds. That's not quite answering the question, though, right? Because their meeting with Ms. Rodriguez, at that point, she has at least taken on the role of an investment advisor, a financial advisor, right? So if they're meeting with her, and does she literally say, right now I'm advising you with my fiduciary duty as an official advisor, but when I tell you to switch your brokerage account to an advice, you know, a guided solutions account, I'm no longer wearing that hat and I no longer have a duty to act in your best interest? Yeah, I agree that the record certainly doesn't suggest the conversation was parsed that finely, nor did it need to be, right? So how, from the customer's perspective, are they supposed to know that fiduciary duty is not the same when she's providing that advice? Because they have elected to have different relationships with respect to how their different funds are managed. That is a choice that the Worthington's have made. They have decided not to pay, for example, advisory fees with respect to their sizable brokerage account because they want to control the investments. They want to continue controlling those investment choices with respect to those funds. A different world would come to an absurd result where a client could decide to open a very, very small advisory account and pay a very, very small advisory fee and receive advisory services with respect to that account, but somehow establish an expectation that they were entitled to without paying a broader advisory relationship to other funds held in the brokerage account. But on the facts of this case, it doesn't matter. There is no dispute that Ms. Rodriguez and Edward Jones met either standard. Whether with respect to the Worthington's, they were owed a greater fiduciary duty with respect to that guided solutions conversation, there is no dispute, no genuine dispute of fact that Ms. Rodriguez met that standard. That goes to the core. To get to that point, the district court had to conclude that the expert declaration and evidence that had been provided was not admissible or not probative of the issue. I was planning to ask you, your colleague has articulated the way that I read the expert's report, which is that I think the district court said it was disregarding the law that you can't focus on cost alone and you have to consider other factors. It strikes me when reading the report that that's precisely what the expert did. The expert said there are particular set of facts here that I'm considering the fact, the kind of investments they have, which are mutual funds, index funds, their particular goals as investors. So in the particular context in which these individuals were investing and the particular kinds of accounts they had, it was the fact that, and he went through the other factors that might have justified a difference, might have justified an increased cost. He went through all of the purported benefits of the financial advisor's account as opposed to a brokerage account, and he ultimately concluded that none of those were warranted. So the language saying that the increase in costs above a certain level is sufficient to show this regardless of other factors, he's really saying, I've thought about all the other factors and they're not relevant, and that's my expert testimony. And so why is that not sufficient to create a factual dispute as to the existence of a breach of whatever obligation was owed? It is not sufficient to create a factual dispute because it is not a factual dispute. So all of the facts that he addresses in his report, those are not in dispute. There's no dispute that Ms. Rodriguez considered the financial circumstances of the Worthingtons. She considered their risk profile. Well, what about his testimony as an expert in the financial industry that recommending an account type that will increase costs above .5 percent under the circumstances, considering all the other potential benefits which are not ultimately illusory in his view, is that that constitutes a breach of the fiduciary duty? I mean, that's his testimony. He's an expert who knows we do allow expert testimony on the nature of particular duties as applied in particular industries. So why is that not sufficient to create a factual dispute on that issue? Because that's the equivalent of a conclusion of law. That's considering all of the undisputed facts and concluding that it breached the best interest standard. No court has ever ---- Well, no, I don't think he's saying that quite. I mean, isn't he saying I'm an expert in the field, I understand how good advice is given, and this is bad advice? He ---- But at core, his opinion is it's bad advice because it's .5 percent more than the fees paid in the broker's account. Well, he has a benchmark for his bad advice, but he's basically saying I'm an expert in the field and this is bad advice. So you don't like it, you don't agree, you think it's ---- I mean, I think you have great arguments about why it's bad, why it's not a very persuasive opinion. But persuasive is a question for the jury. But it's a matter of at what point that duty is breached, right? We have no dispute that diligence was done, additional services were provided, and that the cost is .5 percent more than what it was in the brokerage agreement. No Federal law, not the SEC, not FINRA, no California law, no California case has ever concluded that that is a per se breach where the cost of advisory services is. But I don't ---- I mean, you're characterizing his opinion as a per se opinion because he had a rule of thumb, say. But he could have just said ---- I mean, he's basically saying I looked at these accounts and these fees and they're too high for it to be good advice. And so, yes, he also named a number and you're quibbling, calling it per se for that reason. But let's just assume for a second that he's really just saying these fees are too high for these types of people and it makes it bad advice. Why would that not create a fact dispute about whether it's bad advice? Because it's not just a rule of thumb as applied, Your Honor. It was a bright-line rule. It was a per se breach of the duty, whether it's a best interest duty or the duty under Duffy or Toomey. Well, but, I mean, again, that might be he's, you know, arguably, he may think that you certainly could make an argument that it's below that, and he's effectively being conservative in his numbers. I mean, if he were to testify, if he had, under a different set of facts, an expert said, I'm going to say that, you know, look at all these accounts and this is categorically not in the best interest of the clients because the recommendation was to use an account type that will have fees so high that the principal will be entirely destroyed within 10 years of the account's existence. That would be a per se rule, but I would think that would be, you know, an expert could testify that to establish a breach of the duty, the fiduciary duty, couldn't they? I mean, there's nothing wrong about that as an expert opinion. You might disagree, but you could certainly see cases, maybe .5 percent is the wrong place to draw that line, but experts do have to draw lines, make decisions about the point at which they're going to do that, and that can be more conservative, that can be less conservative, but that's, again, goes to the weight of their persuasiveness or admissibility. But to be clear, Mr. Schultz proposes, again, a per se rule, so not a rule of thumb where circumstances might cause a conclusion as to one investor to deviate from the conclusion as to every other investor. Well, no, he proposes a per se rule that is specific to the plaintiffs who are before him in this case, and the particular circumstances that exist as to them, which involve the kinds of investments they're making, which are mutual fund and index funds investments, which are going to have their own cost structures, and presumably reflect their underlying investment strategies to a certain degree. I mean, I think we're not, he's not saying that this .5 percent rule would apply if you had a different set of plaintiffs whose only goal was growth and had no risk aversion whatsoever, who wanted to involve an individual high-risk but high-growth potential stock, something like that. We're talking about index fund, mutual fund investors in these particular contexts. No, I think he was proposing, actually, a bright-line rule that he reports lies— I mean, he only was testifying about the individuals who were before him, correct, and their accounts. Not quite. His expert report was also offered in support of their motion to certify a nationwide class using that same bright-line rule, and that's the problem. That's where it crosses the line. But wouldn't the class have been of people with low-volume accounts with this type of investment in them? I mean, it's not like for very rich people. I mean, and that's—and again, maybe you'd have an argument that you couldn't certify a class on the basis of this rule because there's too much variation within the class as to what their goals were and that it doesn't actually apply. But that's a separate question of to the extent he was testifying as to these individuals. You know, was it sufficient to create a dispute of material fact as to these individuals? Even as to these individuals, if you look at the nationwide case or the Worlds of Wonder case, what his opinion does is exactly what this Court did not permit the experts there to do, and that was to look at the undisputed facts and conclude, for example, in the Worlds of Wonder case, that in that expert's view, Deloitte exhibited a level of scienter that was sufficient under the law. That's what Schultz is doing here. He is looking at the undisputed facts and concluding it's a breach. Well, but he's not saying sufficient under the law. He's saying it makes it bad advice. But could I get — so can I go back to an earlier question? Because I think you have a — in my view, you have a problem with this being a fact dispute if there really is a duty in this context to be in the client's best interest. But earlier on, when we were talking about this 2019, I don't know, clarification, restatement, can you explain? I think there was a premise of the questions earlier that it was just reaffirming prior law. And I don't know that you — do you agree that it was just reaffirming prior law? I do not believe it was reaffirming prior law. Because if you look at the investment advisor cases, including the cases where State — the claim was a State law claim for breach of fiduciary duty, and the source of that duty was the Investment Advisors Act, that — even in those cases, that duty has never been applied outside the scope of the advisory relationship and the investments managed within that advisory relationship. That's why I don't think that is a correct statement of the law at the relevant time in 2016. I've had trouble today. So did the 2019 statement, though, say that it was reaffirming prior law? What did it say it was doing? I need to go — I don't think it was that precise. I don't think it — it certainly did not appear on its face to engage in a historical analysis of the application of the Federal fiduciary standard in the past. It was a passing statement about advice related to account type, right, account type advice. So to the extent that was the view, it was news to the industry, and it was new as of 2019. And can you point to anything that helps us as not experts in this industry understand that? Like, what do we look at to see whether this was new or not? Yeah. I think the best place to look is the very fact that that very year, the SEC adopted Regulation Best Interest, so Reg BI. That rule expressly applies to this circumstance. It applies to the circumstance where a broker has an existing brokerage relationship with a client and is recommending an account type. So let's assume — And does that say, like, this is new now? I mean, where do we learn that this is new? It's in Reg BI. It's in Regulation Best Interest. Does it say it's new? Yes. And it was very — Reg BI was a monumental undertaking for the industry. It was the first time that the best interest standard was adopted for broker-dealers. It was after public release and extensive public comment. In fact, it was adopted in 2019, and the effective date had to be delayed until 2020. So there's no question. The best interest standard is the correct standard and would apply to the Worthingtons today. But the issue is it doesn't apply back to 2016. Well, and it is the case, is it not, that — and I think this is one of the things you've quoted — that in adopting the best interest standard, they did apply the best interest standard. There was a choice not to apply a full version of the fiduciary duty standard that applies under the Investment Advisors Act, correct? That is correct. They decided to make a — some aspects of it were adopted, but they did not just make the obligations of brokers identical to those of investment advisors. That is correct. It is still different, but with respect to the duty that plaintiffs argue applies here, that is Reg BI, and it did not become effective until 2020. Any other questions? Okay. Thank you for your argument. Let's put three minutes on the clock for rebuttal. Thank you, Your Honors. I don't want to address the Schultz opinion. I think you have a good grip on that. Can you point to anything that tells us that this version of best interest that definitely does exist from 2019 on, point to something specific that says it existed prior to that for a choice of accounts? Advice. There is — I don't disagree with opposing counsel that there is something new going on here. I think the Court needs to put it in context and forget about the fact that it's Federal because we're operating under California law. But the context is that the SEC has for years been trying to figure out what is the appropriate relationship, what is the appropriate duty. Even though they now are saying you have to operate in best interests, they still won't call it a fiduciary duty. So there's a lot of wordplay that goes on.  I mean, I guess earlier today, you really weren't talking about any of this Federal law. You were really just coming in and saying, look at California. No. Well, because — here's why. Because we're in California, and California says you have a fiduciary duty. So all of — whether or not they have a fiduciary duty under Federal law is irrelevant. We do have a fiduciary duty. The only question is, what are the contours of that duty? That's why we're looking at the Federal law. And so what — what tells us that the contours of the duty in California prior to 2019 were what they are after 2019 in Federal law? Well, my question is, why do we have to rely on whether this is retroactive or not? That duty was available for the SEC to adopt and to propose for many, many years. They finally got around to doing it after the industry went hog wild moving their — their brokerage clients over to advisory fee-based accounts. But why are we restricted from looking at what California law would consider a fiduciary duty under the circumstances? And I also want to point out, if you look at — So I just want to — I just want to be very clear. Are you conceding that as of 2016, someone who had clients who had both an investment advisor account and a brokerage account, the investment advisor did not have a duty to act under Federal law, a duty to advise the client in their best interest as to account-type choice? Best interest did not come into effect until 2019. The 2019 guidance that I just read from the SEC, you concede was new as of 2019? Yes. Okay. So you're relying solely on state law?  What I'm relying on is the fact that state law says there has to — so think about this. Do we have any California cases that address these specific circumstances? No. But do we know that California law imposes a fiduciary duty? Yes. So how do we fill that in? How do we figure it out? We have to look at the Federal law. We have to look at other circumstances. We have to analogize to other kinds of cases. That's why I quoted Duffy, because Duffy in footnote 8 tells us that you have — your duty is to ascertain whether the client truly understands what the risks are. In our case, it's not a risk that we're talking about. It's advice. So Duffy says you have to truly ascertain whether or not the client understands what the costs are. Okay? So in 2019, the SEC got around to recognizing, you know — You're over your time. So unless my colleagues here want more, I think I'm going to cut you off. Do you want more answer? Okay. Sorry. You're over your time. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, SUNG, Pitts